UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:18-cv-22922-MOORE/SIMONTON

GERALDINE BUENAVENTURA,
as personal representative of the
estate of BEN BUENAVENTURA,

      Plaintiff,

v.

NCL (BAHAMAS) LTD.,
D-I DAVIT INTERNATIONAL, INC.,
HATECKE SERVICE USA, LLC., and
D-I DAVIT INTERNATIONAL-HISCHE
GMBH,

      Defendants.

_____/

## AMENDED COMPLAINT

COMES NOW, Plaintiff, GERALDINE BUENAVENTURA, as personal representative

of the estate of BEN BUENAVENTURA, and sues the Defendants NCL (BAHAMAS) LTD., D-

I DAVIT INTERNATIONAL, INC., HATECKE SERVICE USA, LLC., and D-I DAVIT

INTERNATIONAL-HISCHE GMBH, and alleges as follows:

## GENERAL ALLEGATIONS

### a. Jurisdiction

1. This is an action for all damages arising from the injuries, suffering and death of the

    decedent on behalf of the Estate and all survivors and beneficiaries under the Jones Act,

    46 U.S.C. §3104; the General Maritime Law of the United States; the Death on the High

    Seas Act, 46 U.S.C. § 30301 et seq., and any other applicable wrongful death or survival

act, seeking damages in excess of the jurisdictional amount, exclusive of costs, attorneys' fees and interest.

2. Plaintiff, Geraldine Buenaventura, as a Personal representative for the Estate of Ben Buenaventura, deceased [hereinafter "decedent"], is a citizen and resident of the Philippines.  Buenaventura brings this action on behalf of the Estate and on behalf of all survivors who are entitled to recover including, but not limited, to:

A. Geraldine Buenaventura, Wife;

B. Brenzid Lawrence C. Buenaventura, minor child (6), born August 21, 2011.

3. At all times material hereto, Ben Buenaventura was a citizen of the Philippines and employed as a seamen, working for the Defendant Norwegian Cruise Lines (Bahamas) Ltd. [hereinafter "NCL"] as a waiter.

4. At all times material hereto, Defendant NCL is a Bermuda corporation with its principal place of business in Miami, Florida, where it engages in extensive business activities.

5. Defendant D-I DAVIT INTERNATIONAL, INC [hereinafter "Davit International"] is a foreign for profit corporation registered to do business in Florida with offices and an officer/director in Ft. Lauderdale, Florida.

6. Defendant HATECKE SERVICE USA, LLC [hereinafter "Hatecke"] is a Florida Limited Liability company registered to do business in Florida with offices in Miami, Florida.

7. Defendant D-I DAVIT INTERNATIONAL GMBH [hereinafter "Davit DE"] is the parent company of Davit International.   Davit DE is a foreign for profit corporation doing business in Florida through its agent and/or representative, Davit International.

**b. Status of the Parties**

8. At all times materials hereto, the Defendant NCL owned, operated, managed and/or

controlled the *Norwegian Breakaway*, and was the employer of Ben Buenaventura.

9. At all times material hereto, Davit International and/or Davit DE, was the manufacturer and/or seller of the davit(s) which was/were incorporated into the lifeboat system used aboard the *Norwegian Breakaway*.

10. At all times material hereto, Davit International and/or Davit DE provided aftersales customer support to Defendant NCL, as to all aspects of the davits and lifeboat systems, including but not limited to annual and periodic inspections accordance with required SOLAS, IMO and other applicable industry standards, as well as maintenance, repairs, technical help and crew training.

11. At all times material hereto, Defendant Hatecke provided service, maintenance, repairs, inspection and/or surveys of the lifeboat systems aboard the *Norwegian Breakaway*, and certifying that each lifeboat systems' fitness for their intended use in accordance with required SOLAS, IMO and other applicable industry standards.

12. At all times material hereto, Ben Buenaventura was a seamen under the Jones Act, because the Defendant maintained its base of operations in the United States, the Defendant NCL was publicly traded on the New York Stock Exchange, an extremely substantial amount of the Defendant's revenue is derived by its operations in the United States and through the sale of cruise tickets to U.S. passengers, and the Defendant's vessel upon which the decedent was injured and regularly sailed out of U.S. ports as did the majority of Defendant's fleet, in addition to other contacts with the United States.

13. Since decedent Ben Buenaventura was a Jones Act seaman, he is entitled to the statutory remedies set forth in the Jones Act, 46 U.S.C. §3104 and the Federal Employers Liability Act, 45 U.S.C. §51 et seq incorporated therein by reference, the Death on the High Seas

Act 46 U.S.C. § 30301, as well as the remedies guaranteed by the United States Supreme Court set forth as part of the general maritime law for seamen.

### c. Facts Giving Rise to the Cause of Action

14. On July 20, 2016, Ben Buenaventura was working on board the Defendant's vessel, *Norwegian Breakaway*, carrying out job duties assigned to him. The vessel was in navigable waters around Bermuda.

15. Plaintiff Ben Buenaventura was assigned to conduct and assist in an unusual amount of lifeboat and rescue boat drills, such as Code Alpha (Medical Emergency), Code Bravo (Fire onboard), Code Delta (Ship damage), and Code Oscar (Man overboard)[1]. This is more than the usual number of drills and for a longer period of time, making it exhaustive on not only the participants, but also on the equipment used.

16. The subject lifeboat system incorporated and utilized a davit which was manufactured and sold by Defendant Davit International and/or Davit DE, and the lifeboat system was serviced, inspected, certified and/or maintained (at least in part) by Defendants Davit International, Davit DE and/or Hatecke.

17. After entering a lifeboat on Deck 7, the lifeboat detached from the vessel when a securing wire in the lifeboat system snapped and/or broke causing decedent Ben Buenaventura to fall nearly six stories into the water.  The sole remaining wire holding the lifeboat snapped causing the lifeboat fall to the water crushing him.

18. The search for Ben Buenaventura took a considerable amount of time because most crewmembers thought that when the "Man Overboard" Code was called, it was still part of the drill. Even after Ben emerged from the lifeboat crashing on top of him, the

---

[1] The Man Overboard drill required Ben Buenaventura to board a rescue boat, to be lowered into the sea, and then used to retrieve a man overboard in this simulation process.

management of the vessel failed to alert real and actual emergency personnel.

19. As a direct and proximate result of Defendant's failure to provide reasonably safe rescue boat, Ben Buenaventura sustained severe injuries, including but not limited to acute post-hemorrhagic anemia, acute respiratory failure, fracture of right and left acetabulum, and acidosis.

20. Due to his injuries suffered as a direct and proximate result of Defendant's negligence, recklessness and the unseaworthiness of Defendant's vessel, decedent Ben Buenaventura, was transported to a hospital in Bermuda, for emergency medical care.

21. Plaintiff was then transferred to Ryder Trauma Center at Jackson Memorial Hospital in Miami, Florida, to treat his severe injuries.

22. As a direct and proximate result of Defendant's negligence, recklessness and the unseaworthiness of Defendant's vessels, Plaintiff Ben Buenaventura required multiple surgeries for his aforementioned injuries.

23. As a direct and proximate result of Defendants' negligence, after 40 days in ICU, Ben Buenaventura met his untimely demise on August 27, 2016.

24. Plaintiff Ben Buenaventura required lifesaving support from the day of his injury up until he passed.

25. Ben's wife, Geraldine Buenaventura, had been regularly working with Defendant NCL, and at the time of the tragic accident she was employed as a Restaurant Hostess. At the time of the tragic accident on July 20, 2016, Geraldine personally witnessed and experienced the tragic incident which led to the injury and eventual death of her husband.

### d. Arbitration

26. On March 14, 2016, decedent entered into an eight-month employment contract with C.F.

Sharp Crew Management Inc. ("Sharp Crew"), for and in behalf of its principal, Defendant NCL. The employment agreements between Ben Buenaventura and the Defendant are covered by the Collective Bargaining Agreement[2] (CBA) and the POEA Standard Employment Contract ("POEA"), which purportedly contain provisions requiring the arbitration of any claims arising out of his employment with the National Conciliation and Mediation Board ("NCMB").

27. As shown below, the arbitration provision, in conjunction with the arbitration Board's decision, entitles the Plaintiff to bring this claim in this Honorable Court in order to hold the Defendants responsible for their negligence.  To hold otherwise would effectively awarded the Plaintiff nothing, and prevent Plaintiff from seeking relief for the Defendants' tortious conduct because the arbitration provision purportedly requires Plaintiff to submit all claims arising from employment to arbitration, but the arbitrator ruled that such claims are "*exclusively vested in another tribunal*, and… must be determined by [a] full blown trial," **which leaves Plaintiff with no avenue to seek relief** (other than herein).

28. By requiring arbitration of the Plaintiff's claims in the Philippines under Philippine law, and the arbitration panel's ruling that the Plaintiff's claims must be brought in another

---

[2] CBA contract states in relevant part:  Any and all claims grievances and disputes of any kind whatsoever between … the seafarer, on one side and Norwegian and/or … the Employer … on the other side which arise from, are in any way related to or are in connection with the Seafarer's shipboard employment with Norwegian shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958)("The Convention"), **except as otherwise provided in any government mandated contract, such as the Standard POEA Contract for Seafarers from the Philippines**. In addition, the Unions, Seafarer, and Norwegian agree that the Arbitrator shall have exclusive authority to resolve any claims, grievances, and disputes such as the interpretation, procedures, location, applicable law, validity and enforceability of the arbitration provision of this Agreement.

tribunal, the above contractual provisions violated the express guarantees of the Jones Act, Federal Employer's Liability Act, which provide in pertinent part:

a. Jones Act, 46 U.S.C. § 30104:

A seaman injured in the course of employment or, if the <u>seaman dies from the injury</u>, the personal representative of the seaman may elect to bring a <u>civil action at law, with the right of trial by jury</u>, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section. (emphasis added)

b. Federal Employers Liability Act, 45 U.S.C. §55:

<u>Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void</u>: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought. (emphasis added)

29. By denying the Plaintiff a right to jury trial and the remedies guaranteed by the Jones Act and general maritime law, the above contractual provisions also expressly violated the public policy of the United States and centuries of U.S. maritime law, which have treated seaman as "wards of the court," *Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367 (1932), in order to "protect them from the harsh consequences of arbitrary and unscrupulous action of their employers, to which they as a class are peculiarly exposed." *Collie v. Ferguson*, 281 U.S. 52, 55 (1930).

30. Nevertheless, decisions of the Eleventh Circuit Court of Appeals have held that such challenges to arbitration provisions in seamen's employment contracts, which are subject to the Convention on the Enforcement of Foreign Arbitral Awards [hereinafter the "Convention"], may only be asserted <u>after</u> arbitration has been instituted and completed

by virtue of the operation of Articles II and V thereof. *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011). Herein, it is plaintiff's position that the arbitration has been instituted and completed.

31. Sharp Crew and NCL initiated arbitration proceedings with NCMB on September 9, 2016, seeking declaratory relief on the entitlements under the CBA and the POEA and other claims arising from the death of Mr. Ben Buenaventura.

32. Defendant paid Plaintiff the $110,000 death benefit she is entitled under the CBA and POEA agreements. However, Geraldine Buenaventura sought additional remedies that arose out of the Defendant NCL's negligent acts that led to the death of Ben Buenaventura.[3]

33. Importantly, throughout the arbitration proceedings, Plaintiff clearly, expressly and repeatedly set forth the decedent's entitlement to his remedies as a seaman under the Jones Act. For example, the Plaintiff set forth:

> RESPONDENTS ARE ENTITLED TO CLAIM FOR NEGLIGENCE AND FOR DAMAGES UNDER THE JONES ACT WHICH INCLUDE BUT ARE NOT LIMITED TO: PRE-DEATH PAIN AND SUFFERING, LOSS OF INCOME, LOSS OF CONSORTIUM, AND LOSS OF NURTURE AND GUIDANCE TO THE MINOR CHILD.
>
> 28.   Complainants forestalled Respondents from proceeding with claims in the United States by initiating this notice to arbitrate thirteen (13) days after Ben's death.

---

[3] The CBA death benefit expressly did *not* preclude the Plaintiff from pursuing any claim with respect to tort and/or negligence in relation to the death of Ben Buenaventura.

29.     Respondents submit that the instant complaint must be governed by the application of the *Jones Act* (US), a United States (US) federal statute which, among other purposes, provides for the promotion and maintenance of merchant marine vessels, regulates maritime commerce in US waters and between US ports, and empowers injured seafarers or their heirs, in case of death, to claim and collect from their employers for the negligence of the ship owner, the captain, or fellow members of the crew.

> *A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the injury to, or death of, a railway employee apply to an action under this section.*

A copy of the pertinent portion of the Jones Act from the US Government Publishing Office[12] is attached as *Annex "5".*

30.     The *Jones Act* allows foreigner-seafarers to claim under said law, if the injury occurs within US territory. The accident and eventual death of Ben occurred in US territory, making the *Jones Act* applicable.

34. The Plaintiff continuously asserted the decedent's entitlement to remedies under the Jones Act and general maritime law and that the denial of these remedies in the arbitration would constitute a violation of U.S. public policy, rendering any award unenforceable.

35. On January 30, 2018, the arbitration panel rendered a detailed decision that considers the arguments by both parties. The arbitration panel dismissed the complaint because it did not have jurisdiction over the claims, providing in pertinent part:

> After a meticulous and exhaustive review of the arguments of the parties, this Board finds that **it has not jurisdiction over the instant complaint and thereby dismisses the same**.
>
> In their submission, the following issue was presented for resolution: "To determine the entitlements under the CBA and POEA and other claims arising from the death of Mr. Ben Buenaventura."
>
> The issue is akin to a declaratory relief which has been defined as an action by any person interested in a deed, will, contract or other written instrument,

executive order or resolution, to determine any question of construction or validity arising from the instrument, executive order or regulation, or statute, and for a declaration of his rights and duties thereunder. The only issue that may be raised in such a petition is the question of construction or validity of the provisions in an instrument or statute.

……

. . . [T]here is a likelihood that there are other remedies already available to the parties, including an action wherein the relief, if proper, may be granted, beyond the bare declaration of their rights and duties.

……

Considering the scope of the pleadings filed by the parties, it is not likely that the case would end with a decision akin to a declaratory relief. That said, we deed it prudent to decline action in this case.

……

This Board will be arrogating unto itself a power that is exclusively vested in another tribunal.

……

Assuming nonetheless that this Board can exercise jurisdiction on the basis of Article 262 of the Labor Code, as amended **the dispute does not fall within the contemplation of a labor dispute**. What is being asked of this Board to rule pertains to tortious conduct of one party that would entitle the other party to damages.

……

. . . .What is being sought for clarification is such other claims or entitlement that may arise as a consequence of the purported gross negligence committed that led to the death of Ben Buenaventura. Certainly, such determination cannot be had on mere position papers as the damages, including **the claim of failure to exercise the required diligence must be determined by full blown trial with the court having jurisdiction over such quasi-delict.** The respective claims cannot be determined by going only though the four corners of the contract as has been admitted in the respective pleadings of the parties that there was additional claim for payment by reason of the purported negligence.

See Arbitration Decision attached as Exhibit "1."

36. As such, Plaintiff was denied the right to pursue any remedy under the Jones Act. Now,

herein, Plaintiff seeks to set aside the Philippines Arbitration decision pursuant to the

Convention and controlling precedent.   The Plaintiff is entitled to challenge the arbitration decision and raise her public policy defenses at the post-arbitration enforcement stage.   *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257 (11th Cir. 2011); *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985).

## COUNT I SURVIVAL ACTION UNDER THE JONES ACT AGAINST DEFENDANT NCL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty six (36) as though alleged originally herein.

37. On July 20, 2016, Ben Buenaventura was employed by Defendant NCL as a seaman and was a member of the crew on aboard the *Norwegian Breakaway*. The vessel was in navigable waters in Bermuda.

38. Defendant owed Ben Buenaventura a duty of reasonable care for his safety, including care to maintain the vessel in a reasonably safe condition and to operate the vessel safely and to provide a reasonably safe working environment.

39. Ben Buenaventura death is due to the fault and negligence of Defendant, and/or their agents, servants, and/or employees, as follows:

   a. Defendant failed to use reasonable care to provide and maintain a proper and adequate machinery, crew and equipment, including and especially the equipment and machinery for the lifeboat system, as well as the crew involved in the lifeboat drill and the crew involved with responding to the actual emergency at issue;

   b. Defendant failed to update and modernize the shipboard equipment to eliminate the unsafe and dangerous conditions that developed;

   c. Defendant failed to properly maintain the equipment involved in the lifeboat system, leading to failure of the tethering and the davit wire cord used to lower

and raise the lifeboat, rendering the operation of the lifeboat unsafe and dangerous, and unfit for its intended purpose;

d.  Defendant failed to properly instruct and train the crew members to make sure the equipment involved was properly inspected for dangers, and properly operated before use;

e.  Defendant failed to ascertain the cause of prior similar accidents so as to take measures to prevent their recurrence, and more particularly decedent's accident;

f.  Failure to provide a safe place to work in that the lifeboat system and operation was not performed in a safe manner;

g.  Defendant continued to utilize the lifeboat system even with knowledge of the faulty and unsafe equipment;

h.  Defendant failed to provide adequate instruction, and supervision by failing to timely alert the crew members of the actual and on-going emergency when the decedent and other seamen fell several stories into the ocean;

i.  Defendant failed to use reasonable care to provide decedent with a reasonably safe workplace;

j.  Defendant failed to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the decedent, while engaged in the course of his employment on said vessel;

k.  Defendant used outmoded work methods and procedures and neglected modern material handling techniques;

l.  Defendant failed to provide decedent with mechanized aids, commonly available in other heavy industries;

m. Defendant failed to use reasonable care in ensuring the safety of the crew when Defendant planned on executing an unusual amount of drills, knowing the life boats would be lowered and raised several times from Deck 7, creating more pressure on the equipment that is rarely used; and/or

n. Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

40. At all times material hereto, Defendant knew of the foregoing conditions causing the decedent's injuries and death and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

41. As a direct and proximate result of the negligence of Defendant, Ben Buenaventura died.

**WHEREFORE**, Plaintiff demands damages as allowed under the Jones Act, 46 U.S.C. § 30104, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, and funeral expenses, and all other damages allowable by law, including punitive damages.  Plaintiff demands a trial by jury for all issues so triable and any other relief this Court deems proper.

## COUNT II—UNSEAWORTHINESS AGAINST DEFENDANT NCL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty six (36) as though alleged originally herein.

42. On July 20, 2016, Ben Buenaventura was employed by Defendant NCL as a seaman and was a member of the crew on aboard the *Norwegian Breakaway*. The vessel was in navigable waters in Bermuda.

43. At all times material hereto, the vessel was owned, managed, operated and/or controlled

13

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

by Defendant.

44. Defendant NCL had the absolute non-delegable duty to provide Ben Buenaventura with a seaworthy vessel. When equipment fails under normal use, a presumption arises that the equipment was defective and hence unseaworthy. *See Villers Seafood Co., Inc. v. Vest*, 813 F.2d 339, 342 (11th Cir. 1987).

45. On July 20, 2016, Defendant breached that duty to decedent by providing him with an unseaworthy vessel on which to work as a seaman.

46. On July 20, 2016, the unseaworthiness of Defendant's vessel was a legal cause of injuries and damages to Ben Buenaventura by reason of the following:

    a. The vessel was rendered unsafe and unfit, due to the conditions created by Defendant, as follows: (1) Having a defective and/or faulty lifeboat system, including but not limited to the davit and worn down tether and wire cord, making the operation of the lifeboat system not only unfit for its intended purpose, but in such a condition to be dangerous and place those who utilize the lifeboat system at risk for serious injury or death; (2) The vessel was unsafe and unfit due to the conditions created by Defendant's conduct; (3) The job methods and procedures were not reasonably fit for the intended purpose as it posed an unreasonable risk of injury; (4) Due to an unsafe working environment; (5) By the presence of a lifeboat system not reasonably fit for its intended purpose; (6) By the total disregard for the lives and safety of anyone utilizing the lifeboat system davit; (7) Defendant unreasonably required decedent and other crewmembers to work with inadequate and/or defective machinery and equipment, especially for the lifeboat drill; (8) Defendant unreasonably required decedent to participate in work

14

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

activities with an inadequate and/or untrained crew, especially for the lifeboat drill, and the untimely rescue of the decedent and the other seamen that fell several stories into the ocean; (9) Defendant unreasonably failed to warn the decedent of the dangers associated with his work activities, especially for the life boat drill; (10) Defendant failed to provide decedent and his fellow crewmembers with proper training and/or supervision with respect to work activities, especially for the lifeboat drill and the untimely rescue of the decedent; (11) Defendant unreasonably failed to provide adequate manpower to perform the work activities aboard the vessel, especially for the lifeboat drill and the untimely rescue of the decedent; (12) Defendant unreasonably created an unsafe work environment; (13) Defendant unreasonably perpetuated an unsafe work environment; (14) Defendant created a working environment where crew members are discouraged and/or unable to assist each other with duties; and (15) Defendant perpetuated an unsafe work environment where crew members were discouraged and/or unable to assist each other in work duties; all of which caused decedent to become injured.

b.  The vessel was not fit for its intended purpose;

c.  The vessel lacked proper equipment and machinery, which was demonstrated by having a defective and/or faulty lifeboat system, including but not limited to the davit and worn down tether and wire cord;

d.  The vessel's crew was not properly trained, instructed or supervised, which is demonstrated by the untimely rescue effort after the decedent fell into the water;

e.  The vessel did not have a fit crew;

f.  Failure to conduct proper job analysis and risk of harm analysis;

g.   The vessel did not have adequate manpower for the tasks being performed; and/or

h.   The crew and decedent were overworked to the point of being exhausted and not physically fit to carry out their duties.

47. As a direct result of the unseaworthiness of the vessel mentioned above, Ben Buenaventura died.

**WHEREFORE**, Plaintiff demands damages as allowed under the General Maritime Law, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, and funeral expenses, and all other damages allowable by law, including punitive damages. Plaintiff demands a trial by jury for all issues so triable and any other relief this Court deems proper.

## COUNT III - DEATH ON THE HIGH SEAS ACT (46 U.S.C. § 30301et seq.) AGAINST ALL DEFENDANTS

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty six (36) as though alleged originally herein.

48. At all times material hereto, Defendants owed Ben Buenaventura a duty of reasonable care.

49. On July 20, 2016, Ben Buenaventura died due to the fault and negligence of Defendants, their employees, and agents, and due to the unseaworthiness of the vessel as follows:

a.   Failure to use reasonable care to provide and maintain a safe place to work for Ben Buenaventura, fit with proper and adequate machinery, crew and equipment, including and especially the equipment and machinery for the rescue boat, of the lifeboat system, as well as the crew involved in the life boat drill;

b.   Defendants failed to update and modernize the shipboard equipment to eliminate the unsafe and dangerous conditions that developed;

c.   Defendants failed to properly maintain the equipment involved, leading to failure of the lifeboat system, including but not limited to the tethering and the davit wire cord used to lower and raise the lifeboat, rendering the operation of the lifeboat unsafe and dangerous, and unfit for its intended purpose;

d.   Defendants failed to properly instruct and train the crew members to make sure the equipment involved was properly inspected for dangers, and properly operated before each and every use;

e.   Defendants failed to ascertain the cause of prior similar accidents so as to take measures to prevent their recurrence, and more particularly decedent's accident;

f.   Failure to provide a safe place to work in that the lifeboat operation was not performed in a safe manner;

g.   Defendants continued to utilize the lifeboat system even with knowledge of the faulty and unsafe equipment;

h.   Defendants failed to provide adequate instruction and supervision by failing to timely alert the crew members of the actual and on-going emergency when the decedents and other seamen fell several stories into the ocean;

i.   Defendants failed to use reasonable care in ensuring the safety of the crew when Defendant planned on executing an unusual amount of drills, knowing the life boats would be lowered and raised several times from Deck 7, creating more pressure on the equipment that is rarely used;

j.   Failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly Ben Buenaventura, while engaged in the course of his employment on said vessel;

k. Failure to use reasonable care to maintain the vessel and its equipment;

l. Failure to provide adequate crew in terms of numbers and/or training for the operations undertaken at the time of the subject incident;

m. Failure to provide and utilize adequate safety devices at the time of the subject incident;

n. Defendants used outmoded work methods and procedures and neglected modern material handling techniques;

o. Defendants failed to provide decedent with mechanized aids, commonly available in other heavy industries;

p. Failing to adequately manage the vessel's crew;

q. Failure to utilize proper equipment;

r. Failure to provide reasonable and adequate aftersales customer support;

s. Failure to properly and adequately inspect the lifeboat system in accordance with required SOLAS, IMO and other applicable industry standards, as well as maintenance, repairs, technical help and crew training; and/or

t. Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

50. As a result of the negligence of Defendants, its agents and employee and/or the unseaworthiness of the vessel, Ben Buenaventura died. Ben Buenaventura's survivors, his wife Geraldine Buenaventura, and Brenzid Lawrence C. Buenaventura, 6 years old, sustained pecuniary losses as allowed by law.

**WHEREFORE**, Plaintiff demands damages as allowed under the Death on the High Seas Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act,

including but not limited to pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, funeral expenses, and all other damages allowable by law. Plaintiff demands a trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT IV – WRONGFUL DEATH UNDER THE GENERAL MARITIME LAW AGAINST DEFENDANT NCL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty six (36) as though alleged originally herein.

51. On July 20, 2016, the decedent was employed by Defendant as a seaman and was a member of the crew on aboard the *Norwegian Breakaway*. The vessel was in navigable waters in Bermuda.

52. Pursuant to the General Maritime law, Defendant owed decedent a duty of reasonable care for his safety, including care to maintain the vessel in a reasonably safe condition and to operate the vessel safely and to provide a reasonably safe working environment.

53. On July 20, 2016, Ben Buenaventura suffered severe injuries, pre-death conscious pain and suffering, and ultimately died due to Defendant, and/or their agents, servants, and/or employees, breaching its duty to Plaintiff through the following acts and/or omissions:

   a. Defendant failed to use reasonable care to provide and maintain a proper and adequate machinery, crew and equipment, including and especially the equipment and machinery for the lifeboat system, as well as the crew involved in the life boat drill and the crew involved with responding to the actual emergency at issue;

   b. Defendant failed to update and modernize the shipboard equipment to eliminate the unsafe and dangerous conditions that developed;

   c. Defendant failed to properly maintain the equipment involved leading to failure of

equipment, rendering the operation of the lifeboat system unsafe and dangerous, and unfit for its intended purpose;

d.  Defendant failed to properly instruct and train the crew members to make sure the equipment involved was properly inspected for dangers, and properly operated before use;

e.  Defendant failed to ascertain the cause of prior similar accidents so as to take measures to prevent their recurrence, and more particularly decedent's accident;

f.  Defendant used outmoded work methods and procedures and neglected modern material handling techniques;

g.  Defendant failed to provide decedent with mechanized aids, commonly available in other heavy industries;

h.  Failure to provide a safe place to work in that the lifeboat system and operation was not performed in a safe manner;

i.  Defendant continued to utilize the lifeboat system even with knowledge of the faulty and unsafe equipment;

j.  Defendant failed to provide adequate instruction, and supervision by failing to timely alert the crew members of the actual and on-going emergency when the decedent and other seamen fell several stories into the ocean;

k.  Defendant failed to provide decedent with a seaworthy vessel;

l.  Defendant failed to use reasonable care to provide decedent with a reasonably safe workplace;

m.  Defendant failed to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the decedent,

while engaged in the course of his employment on said vessel;

n. Defendant failed to provide adequate instruction, and supervision to crew members and decedent;

o. Defendant failed to provide prompt, proper and adequate medical care which aggravated decedent's injuries and caused him additional pain and disability;

p. Defendant failed to use reasonable care in ensuring the safety of the crew when Defendant planned on executing an unusual amount of drills, knowing the life boats would be lowered and raised several times from Deck 7; and/or

q. Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

54. At all times material hereto, Defendant knew of the foregoing conditions causing the decedent's injuries and death and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

55. As a direct and proximate result of the negligence of Defendant, the decedent was injured about his body and extremities, consciously suffered physical pain and suffering, incurred medical expenses in the care and treatment of his injuries, and then died.

**WHEREFORE**, Plaintiff demands damages as allowed under the Jones Act, 46 U.S.C. § 30104, and/or the General Maritime Law, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages. Plaintiff demands a trial by jury for all issues so triable and any other relief this Court deems proper.

## COUNT V – WRONGFUL DEATH UNDER THE GENERAL MARITIME LAW AGAINST DEFENDANTS DAVIT INTERNATIONAL DAVIT DE AND HATECKE

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty six (36) as though alleged originally herein.

56. Pursuant to the General Maritime law, Defendants Davit International, Davit DE and Hatecke owed Ben Buenaventura a duty of reasonable care.

57. On July 20, 2016, decedent suffered severe injuries, pre-death conscious pain and suffering, and ultimately died due to Defendants, and/or their agents, servants, and/or employees, breaching its duty to decedent through the following acts and/or omissions:

   a. Failure to provide a properly working lifeboat system, including but not limited to the davit and/or related equipment which failed;

   b. Failure to adequately service, install, repair, maintain and/or inspect the subject lifeboat system, including but not limited to the davit and/or related equipment which failed;

   c. Failure to properly warn of the dangers which befell the decedent;

   d. Failure to have proper manuals, or policies or procedures designed to prevent the incident which occurred;

   e. Defendants failed to update and modernize the shipboard equipment to eliminate the unsafe and dangerous conditions that developed;

   f. Defendants failed to properly maintain the equipment involved leading to failure of equipment, rendering the operation of the lifeboat system unsafe and dangerous, and unfit for its intended purpose;

   g. Defendants failed to properly instruct and train the crew members to make sure the equipment involved was properly inspected for dangers, and properly operated

before use;

h.  Defendants failed to ascertain the cause of prior similar accidents so as to take measures to prevent their recurrence, and more particularly decedent's accident;

i.  Defendants used outmoded work methods and procedures and neglected modern material handling techniques;

j.  Defendants failed to provide decedent with mechanized aids, commonly available in other heavy industries;

k.  Defendants continued to utilize the lifeboat system even with knowledge of the faulty and unsafe equipment;

l.  Defendants failed to provide adequate instruction, and supervision to crew members and Plaintiff;

m. Failure to inspect or investigate the davit for defects and/or dangers and/or hazards;

n.   Failure to provide adequate warnings for prospective users and handlers of the davit, including the decedent;

o.  Failure to provide reasonable and adequate aftersales customer support;

p.  Failure to properly and adequately inspect the lifeboat system in accordance with required SOLAS, IMO and other applicable industry standards, as well as maintenance, repairs, technical help and crew training; and/or

q.  Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

58. At all times material hereto, Defendants knew of the foregoing conditions causing the Plaintiff's injuries and death and did not correct them, or the conditions existed for a

sufficient length of time so that Defendants, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

59. As a direct and proximate result of the negligence of Defendant, the decedent was injured about his body and extremities, consciously suffered physical pain and suffering, incurred medical expenses in the care and treatment of his injuries, and then died.

**WHEREFORE**, Plaintiff demands damages as allowed under the Jones Act, 46 U.S.C. § 30104, and/or the General Maritime Law, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages.  Plaintiff demands a trial by jury for all issues so triable and any other relief this Court deems proper.

<u>**COUNT VI – STRICT LIABILITY AGAINST<br>DEFENDANTS DAVIT INTERNATIONAL AND DAVIT DE**</u>

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty six (36) as though alleged originally herein.

60. Defendant Davit International and/or Davit DE manufactured, designed, marketed, sold, and distributed a Davit D-NPS.MP which was installed and incorporated into the lifeboat system on the *Norwegian Breakaway*.  Said davit failed to safely operate as intended. But for the failure of this davit and/or related equipment, decedent would not have suffered the loss of life.

61. At all times material hereto, Davit International and/or Davit DE had a duty to manufacture, design, distribute, market, and sell a non-defective and properly designed and manufactured davit that was suitable for normal and foreseeable usage. Defendant's respective duties included authorizing the manufacture, design, distribution, marketing,

24

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

and sale of a properly designed and manufactured davit capable of safely withstanding known, foreseeable forces associated with safe handling and normal usage.

62. While using the davit with appropriate care, the davit malfunctioned and created a hazardous situation whereby decedent was killed due to the malfunction of the davit.

63. The condition of the subject davit from the time it left its place of manufacture through the time of decedent's accident, was defective and unreasonably dangerous to intended and foreseeable users, including decedent, in one or more of the following ways and for one or more of the following reasons:

a. The davit onboard the *Norwegian Breakaway* which failed to work properly, was defectively designed from a handling standpoint such that it had an unreasonably dangerous propensity to fail under foreseeable handling and use conditions and failed to have an adequate support structure to prevent the type of incident which occurred;

b. The davit was unaccompanied by any sufficient warning of the danger of malfunction from the use of the device in a foreseeable manner, such that the danger of automatically starting and creating a dangerous situation would be communicated to the users of the device;

c. The davit was improperly designed, manufactured, and assembled, thus causing the device to have an unreasonable and dangerous propensity to malfunction when used or handled under foreseeable conditions, including foreseeable drills;

d. The davit was improperly and inadequately tested;

e. The hazards of the davit were improperly determined;

f. The davit lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the device and reasonable means to reduce such

risks, dangers, and harms; and/or

g. The davit did not perform as safely as an ordinary consumer would expect when used as intended and in manners reasonably foreseeable to those in the chain of distribution of the davit.

64. The unreasonably dangerous nature of the defective condition of the davit created a high risk that the device would be involved in, and it was involved in, a malfunction resulting in the loss of life.

65. As a direct and proximate result of the defects, and subsequent malfunction, in the davit, the decedent was killed, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of decedent's  injuries, suffered physical handicap, lost earnings and earning capacity both past and future.  Plaintiff's damages further include loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the defendant and demands trial by jury.

## COUNT VII – BREACH OF IMPLIED WARRANTY OF FITNESS FOR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AGAINST DEFENDANTS DAVIT INTERNATIONAL AND DAVIT DE

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty six (36) as though alleged originally herein.

66. At the time of the sale, marketing, distribution, manufacture, and design of the davit

26

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

Defendant Davit International and/or Davit DE had extensive knowledge of the purpose for which the product was to be used. The Defendants knew and/or should have known and expected that their expertise, skill and judgment were being relied upon to select, sell, distribute, market, manufacture, and design a safe and suitable product which would not injure its user under normal foreseeable circumstances and usage. Davit International and/or Davit DE implied and warranted the davit device as being safe and fit for the purpose decedent utilized davit for.

67. Davit International and/or Davit DE breached its implied warranty of fitness of safe user usage by distributing, delivering, marketing, and/or selling the defective davit which was unsafe and dangerous, and not reasonably fit for the ordinary purpose for which the davit is used.

68. As a direct and proximate cause of the Defendants Davit International's and/or Davit DE's breach of their implied warranty, decedent was killed when the davit designed, manufactured and sold by Defendant Davit International and/or Davit DE malfunctioned.

69. In addition, as a direct and proximate cause of the Defendant Davit International's breach of their implied warranty, the decedent was killed, was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions there from, incurred medical expenses in the care and treatment of decedent's injuries, suffered physical handicap, lost earnings and earning capacity both past and future.  Plaintiff's damages further include loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and

all other damages allowable by law, including punitive damages.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the defendant and demands trial by jury.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Carol L. Finklehoffe*
**MICHAEL A. WINKLEMAN**
Florida Bar No.: 36719
mwinkleman@lipcon.com
**CAROL L. FINKLEOFFE**
Florida Bar No. 0015903
cfinklehoffe@lipcon.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>August 28, 2018</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Carol L. Finklehoffe*
**CAROL L. FINKLEOFFE**

### SERVICE LIST
***Buenaventura v. NCL (Bahamas) Ltd. et. al.***
**case no.: 18-cv-22922-KMM**

| Michael Winkleman, Esq. | Jerry D. Hamilton, Esq. |
|---|---|
| Florida Bar No.: 36719 | Florida Bar No.: 970700 |

| | |
|---|---|
| mwinkleman@lipcon.com<br>**Carol L. Finklehoffe, Esq.**<br>Florida Bar No.: 0015903<br>cfinklehoffe@lipcon.com<br>LIPCON, MARGULIES,<br>ALSINA & WINKLEMAN, P.A.<br>One Biscayne Tower, Suite 1776<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone No.: (305) 373-3016<br>Facsimile No.: (305) 373-6204<br>*Attorneys for Plaintiff* | jhamilton@hamiltonmillerlaw.com<br>**Robert M. Oldershaw, Esq.**<br>Florida Bar No.: 86071<br>roldershaw@hamiltonmillerlaw.com<br>**Elisha M. Sullivan, Esq.**<br>Florida Bar No.: 57559<br>esullivan@hamiltonmillerlaw.com<br>150 S.E. 2nd Avenue, Suite 1200<br>Miami, Florida 33131<br>Tel: (305) 379-3686<br>Fax: (305) 379-3690<br>*Attorneys for Defendant Hatecke Service USA, LLC* |
| **Anthony P. Strasius, Esq.**<br>Florida Bar No.: 988715<br>Anthony.strasius@wilsonelser.com<br>**Steven C. Jones, Esq**.<br>Florida Bar No.: 107516<br>Steven.jones@wilsonelser.com<br>Wilson, Elser, Moskowitz,<br>Edelman & Dicker, LLP<br>100 Southeast Second Street, Suite 3800<br>Miami, Florida 33131<br>Tel: (305) 374-4400<br>Fax: (305) 579-0261<br>*Attorneys for Defendant D-1 Davit International, Inc.* | **Curtis Mase, Esq.**<br>Florida Bar No.: 73928<br>cmase@maselaw.com<br>kfehr@maselaw.com<br>**Cameron W. Eubanks, Esq.**<br>Florida Bar No.: 85865<br>ceubanks@maselaw.com<br>rcoakley@maselaw.com<br>**Adam Finkel**<br>Florida Bar No.: 101505<br>afinkel@maselaw.com<br>MASE, MEBANE & BRIGGS<br>2601 S. Bayshore, Drive, Suite 800<br>Miami, Florida 33133<br>Telephone: (305) 377-3770<br>Facsimile: (305) 377-0800<br>*Attorneys for Defendant NCL (Bahamas) Ltd.* |

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.