UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:18-cv-22922-MOORE/SIMONTON

GERALDINE BUENAVENTURA,
as personal representative of the
estate of BEN BUENAVENTURA,

       Plaintiff,

v.

NCL (BAHAMAS) LTD.,
D-I DAVIT INTERNATIONAL, INC.,
HATECKE SERVICE USA, LLC., and
D-I DAVIT INTERNATIONAL-HISCHE
GMBH,

       Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

COMES NOW, Plaintiff, GERALDINE BUENAVENTURA, as personal representative

of the estate of BEN BUENAVENTURA, by and through undersigned counsel, hereby files her

opposition to Defendant NCL (Bahamas) LTD.'s ("NCL") Motion to Compel Arbitration

[D.E.41], and in support thereof states:

**<u>Introduction</u>**

This case has already been arbitrated and dismissed for lack of jurisdiction.   The

Arbitration Board ("Arbitration Board") further ruled that even if it were to assume it could

exercise jurisdiction, the Plaintiff would have no remedy because the dispute itself "does not fall

within the contemplation of a labor dispute" under the Philippine Labor Code (Arbitration

Decision - Exhibit 1, page 9)      This is a definitive ruling by the Arbitration Board and not, as

the Defendant incorrectly asserts, an instruction for the Parties to come back when the matter is ripe.

Rather the Parties are at the arbitration enforcement stage where the Plaintiff is now permitted to raise her affirmative defenses on grounds specified in the Convention on the Enforcement of Foreign Arbitral Awards [hereinafter the "Convention"].  *See, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 638 (1985) *quoting* Convention, Art. V(2)(b); *Aggarao v. Mol Ship Magmnt., Ltd.*, 20014 WL 3894079 (D.Md. Aug. 7, 2014) at 10-1.

Here, the choice of forum provision and the choice of law provision contained in the POEA Employment Contract ("the POEA Contract") and the Collective Bargaining Agreement ("CBA") leave Plaintiff with no remedy at all.   This is the very essence of the "Prospective Waiver Doctrine" the Supreme Court of the United States has warned against as being in violation of public policy.

The real issue in this case is not about enforcing the obligation to arbitrate, which has already occurred, but whether Defendant NCL will be allowed to strip its employees of those legal protections which Congress determined were necessary and the Supreme Court has protected over the past century through the simple guise of inserting a choice of law clause into a seaman's employment agreement.

Defendant's Motion to Compel Arbitration should properly be denied.

## **Factual and Procedural Background**

1.      On July 20, 2016, Decedent suffered life-threatening injuries when, as a result of the Defendants' negligence, he plummeted six stories into the water during a life boat drill.  He was grievously injured and remained in an ICU unit for 40 days before succumbing to his injuries.  He is survived by his wife and 7 year old son.

2.      On September 9, 2016, less than two weeks after his death and before his remains

were even returned to the Philippines for burial, NCL initiated arbitration in the Philippines.

3.      In its Arbitration Complaint, NCL asked the Arbitration Board to (1) order the Plaintiff to submit to arbitration for a determination of the benefits she is entitled to receive for the death of her husband under his POEA contract and the CBA, and (2) to order the complete extinguishment of NCL's obligations upon payment of their obligation as determined in the arbitration.  (Notice of Arbitration and Complaint - Exhibit 2).

4.      During the pendency of the arbitration, NCL paid the *contractually* owed death benefits it owed the Plaintiff under the terms of POEA contract.  This was a *contractual* obligation and did not account for any wrongdoing on the part of NCL which caused and/or contributed to the death of the Decedent.  NCL would have been contractually obligated to pay these same death benefits if Decedent had simply died in his sleep aboard the vessel.

5.      In exchange for the *contractually* owed death benefits, on November 2, 2016, Plaintiff signed a Model Receipt and Release form for Contractual Claims ("Receipt")(Exhibit 3).  The Receipt specified that payment <u>only</u> satisfied NCL's *contractual* death benefits obligation and preserved the Plaintiff's right to pursue any potential claim in "negligence, tort, or other legal redress."  Specifically:

> I, [Seafarer][Seafarer's legal heir and/dependent], hereby acknowledge receipt of the sum of [currency and amount] in satisfaction of the Ship Owner's **obligation to pay contractual compensation** for personal injury and/or death under the terms and conditions of my/the Seafarer's employment and I hereby release the Ship Owner from its obligation under the said terms and conditions.
>
> The payment is made without admission of liability of any claims and is accepted **without prejudice to my/the Seafarer's legal heir and/or dependent's right to pursue any claim at law in the respect to negligence, tort, or other legal redress available and arising out of the above incident**. (emphasis added)

6.      Despite the clear and unequivocal language of the Receipt, during the arbitration NCL argued that the execution of the Receipt constituted a full and complete "settlement"

between the Parties and it therefore owed no further monies as all potential claims against it were extinguished[1].

7.     The Arbitration Board considered NCL's request for relief and declined to hear the matter, because even if all the requisite were present (which they were not), "it is not likely that the case would end with a decision akin to a declaratory relief". (Exhibit 1, p. 8)    NCL simply takes the Arbitration Board's position out of context when it argues that the arbitrators declined to rule because the matter was not ripe.  [D.E. 41, p. 5]

8.     Of significance, the Arbitration Board went on to conclude that it lacked jurisdiction to hear the matter because such issues belong exclusively before a trial court.  The Arbitration Board went on to state that *even if it assumed it could exercise jurisdiction*, under the law of the Philippines, the dispute between NCL and the Plaintiff **does not constitute a "labor dispute" within its purview**[2].    Specifically, the Decision states:

_____

[1] In its position paper submitted to the Arbitration Board, NCL argued:

> It is complainants' [NCL] position that their obligation to pay death benefits and other monetary claims arising out of the death of Mr. Ben Buenaventura has already been extinguished after the settlement entered on 2 November 2016 in accordance with Section 20(G) of the POEA Sec and Article 1231 of the Civil Code of the Philippines.

In its position paper NCL further prayed that the Arbitration Board:

> Rule that complainants' [NCL] obligation to compensate respondent wife and deceased seafarer's other heirs for any and all claims arising out of deceased seafarer's death, including for fault and negligence is deemed paid and extinguished.

[2] Labor Code of the Philippines, President Decree No. 442, as amended, provides:

> Art. 262. Jurisdiction over other labor disputes.  The Voluntary Arbitrator or panel of Voluntary Arbitrators, upon agreement of the parties, shall also hear and decide all other **labor disputes** including unfair labor practices and bargaining deadlocks. (emphasis added)

Article 212(l) defines a labor dispute as:

> "Labor dispute" includes any controversy or matter concerning terms and conditions of employment or the association or representation of persons in negotiating, fixing, maintaining, changing or arranging the terms and conditions of employment, regardless of whether the disputants stand in proximate relation of the employer employee.

Likewise, such controversy is exclusively vested within the jurisdiction of the Regional Trial Court.  This Board will be arrogating unto itself a power that is exclusively vested in another tribunal.

Assuming nonetheless that this Board can exercise jurisdiction on the basis of Article 262 of the Labor Code, as amended **the dispute does not fall within the contemplation of a labor dispute**.  What is being asked of this Board to rule pertains to tortious conduct of one party that would entitle the other party to damages.

. . . the claim for failure to exercise the required diligence **must be determined by full blown trial with the court having jurisdiction** over such quasi-delict. (Exhibit 3 (emphasis added).

### Memorandum of Law

### This Matter has Already Been Arbitrated

No matter how NCL distorts or tries to misconstrue the Decision of the Arbitration Board, **this matter has already been arbitrated.**   NCL simply ignores the Arbitration Board's conclusion that even if it could exercise jurisdiction, "*the dispute does not fall within the contemplation of a labor dispute*" under Article 262 of the Philippine Labor Code since "*what is being asked of this Board to rule pertains to tortious conduct of one party that would entitle the other party to damages.*"  (Exhibit 3).

The Arbitration Board's finding of lack of jurisdiction is consistent with the laws of the Philippines.  In *Tolosa v. National Labor Relations Commission*, *et.al.*, (2003) G.R. No. 149578 (Phil.) the Supreme Court of the Philippines held that the Philippine NLRC and labor arbitrators **do not have jurisdiction over seamen's tort claims, and cannot award the tort damages recoverable for such claims**.  (Exhibit 4 – *Tolosa* Decision)

Therefore, even if this Court were to send this matter back for arbitration, it would simply be an exercise in futility.

**The Decision of the Arbitration Board is Against Public Policy
and Plaintiff has Timely Raised this Affirmative Defense**

There are two stages to arbitration related court proceedings: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm, refuse to enforce, or vacate an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011); *see also Aggarao v. MOL Ship Management Co., Ltd.*, 2014 WL 3894079 (D.Md. Aug 7, 2014).

Under this approach, the seaman cannot raise the existence of a foreign choice of law defense or forum selection clause as a public policy defense to the arbitration itself. Instead, there must first be an arbitration proceeding giving the arbitrator an opportunity to apply U.S. law.[3] Where the arbitrator fails to apply U.S. law and the seaman is denied his statutory rights, then a post arbitration public policy defenses can be raised.

Here, NCL initiated the arbitration pursuant to the POEA contract and the CBA which contain both a choice-of-forum and choice-of-law provisions. (Exhibit 2) The Arbitration Board noted that its rulings and findings were in accordance with the law of the Philippines in accordance with the provisions of the POEA contract and CBA. As set forth above, the Arbitration Board determined that there was no cause of action or remedy for the Plaintiff as this matter was not recognized as a labor dispute under the Philippine Labor Code. The Decision not only deprives the Plaintiff of her statutory rights, it deprives her of all rights, leaving her with no remedy or recourse.

This is the exact result that the Supreme Court warned against in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) where Prospective Waiver Doctrine was identified:

---
[3]Plaintiff requested that the Arbitration Board apply US law and even provided the Arbitration Board with a copy of the Jones Act.

…in the event the choice-of-forum and choice-of-law clauses operated in tandem as a **prospective waiver** of a party's right to pursue **statutory remedies** for antitrust violations, **we would have little hesitation in condemning the agreement as against public policy**. (emphasis added).

The decision in *Aggarao v. MOL Ship Management Co., Ltd.*, 2014 WL 3894079 (D.Md. Aug 7, 2014) is directly on point. In *Aggarao*, the plaintiff seafarer was "crushed between a pillar inside the ship and a mobile deck lifting machine suffering grievous injuries. Applying the law of the Philippines, the arbitrator awarded the seaman $89,100 in disability benefits and found that he was not entitled to any other form of damages. In his motion to vacate the award, the seaman argued that the arbitrator's decision applying foreign law deprived him of his opportunity to vindicate his statutory rights as well as his claims for negligence and unseaworthiness. In refusing to uphold the arbitration award the Court found that:

> [T]he arbiter did not simply provide less favorable remedies than those available under U.S. law: *she provided no such remedies*. The POEA Contract destroyed Mr. Aggarao's right to maintenance and cure, and cut off any potential cause of action against Nissan and World Car. ***In limiting Mr. Aggarao's remedies to those allowed by the POEA Contract, the arbiter transgressed this country's strong and longstanding policy of protecting injured seafarers and providing them special solicitude.*** *See, e.g., Am. Export Lines, Inc. v. Alvez,* 446 U.S. 274, 285 (1980) (quoting *Moragne v. States Marine Lines,* 398 U.S. 375, 387 (1970)) (explaining that "[a]dmiralty jurisprudence has always been inspirited with a 'special solicitude for the welfare of those men who under[take] to venture upon hazardous and unpredictable sea voyages' "); *see also Asignacion,* 2014 W L 632177, at * 9. ***Accordingly, the court will not recognize or enforce Mr. Aggarao's arbitration award.*** (emphasis added)

Id. at 468.

Also instructive is the decision in *Corvo v. Carnival Corp.*, 2018 WL 1660669 (S.D.Fla. January 13, 2017). In *Corvo* the arbitrator ruled in favor of the cruise line finding that the seaman did not have a cause of action for vicarious liability for the negligence of a shore side physician the cruise line selected to treat her, awarding the seaman nothing. In refusing to vacate

the arbitration award the Court noted that Panamanian law provided the seaman alternative causes of action. *See also, Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998)(arbitration clause is not enforceable when an arbitration clause does not permit relief equivalent to statutory remedies, or when the arbitration clause has provisions that defeat the remedial purpose of the federal statute).

Unlike the seaman in *Corvo*, the Plaintiff has no remedy as the Arbitration Board has already concluded that her claim against NCL in tort does not constitute a "labor dispute." Consequently, this Honorable Court should have little hesitation in condemning the arbitration award as against public policy.

### Seaman are Wards of the Court Requiring Protection

There are few, if any, areas of the law in which the public policy of the United States is more strongly recognized than the protection of seamen. *See, e.g., Am. Export Lines, Inc. v. Alvez*, 446 U.S. 274, 285 (1980); *Moragne v. States Marine Lines*, 398 U.S. 375 (1970). "Seafarers from the start were wards of admiralty." *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971) *citing Robertson v. Baldwin*, 165 U.S. 275, 287 (1897). As observed by the Supreme Court in *Collie v. Ferguson*, 281 S. Ct. 52, 55 (1930), maritime law has often found it necessary "to protect [seamen] from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed."

To protect seamen from such abuse, both Congress and the Supreme Court have consistently rejected various schemes to deprive them of their guaranteed remedies. *See Aggarao v. MOL Ship Management Co., Ltd.*, 2014 WL 3894079 (D.Md. Aug 7, 2014) (refusing to recognize the Philippine Arbitration Board's award for violating the public policy of the United States because the plaintiff was unable to vindicate her Jones Act claims in arbitration).

Consequently, seamen like Buenaventura have traditionally been afforded special legal remedies. *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354 (1991).

Congress has been explicit in expressing the strong U.S. public policy for protection of seaman. Among the special remedies afforded to seamen is the Jones Act, originally enacted in 1920, which provides a statutory cause of action that expressly guarantees a seamen injured during the course of his employment by his employer's negligence a cause of action to recover his damages. 46 U.S.C. § 30104. It also adopts to seamen, all laws and statutes that are applicable to railway workers under the F.E.L.A., which explicitly prohibit the use of "any contract, rule, regulation, or device whatsoever … to enable any common carrier to exempt itself from any liability created by this chapter…." 45 U.S.C. 55.

To achieve that purpose, the Jones Act affords seamen "heightened legal protections," *Chandris,* 515 U.S. at 354, 115 S.Ct. 2172, including the right to "recover ... with a lower showing of proximate cause than would be required in a non-admiralty case." *Dempsey v. Mac Towing, Inc.,* 876 F.2d 1538, 1542 (11th Cir.1989). Rather than showing, for example, that the employer's negligence was a substantial factor in causing the injury, "causation may be found [under the Jones Act] if the defendant's acts or omissions played any part, no matter [h]ow small, in bringing about the injury." *McClow v. Warrior & Gulf Navigation Co.,* 842 F.2d 1250, 1251 (11th Cir.1988) (citation omitted). This so-called "featherweight" causation standard, *id.* (citation omitted), dramatically increases the likelihood of recovery, thus reflecting the strong public policy deeply embedded in our nation's history.

Accordingly, the Admiralty Courts have a rich tradition of protection of seafarers, which flowed from the uniquely abhorrent conditions workers face at sea.

This Court like Congress, should continue to preserve seafarers' rights by ensuring their

ability to access U.S. Courts and obtain proper redress.

<u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests this Court deny NCL's Motion to Compel Arbitration.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Carol L. Finklehoffe*
**CAROL L. FINKLEOFFE**
Florida Bar No. 0015903
cfinklehoffe@lipcon.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Carol L. Finklehoffe*
**CAROL L. FINKLEOFFE**

<u>SERVICE LIST</u>

***Buenaventura v. NCL (Bahamas) Ltd. et. al.***
**Case no.: 18-cv-22922-KMM**

| Michael Winkleman, Esq. | Jerry D. Hamilton, Esq. |
|---|---|
| Florida Bar No.: 36719 | Florida Bar No.: 970700 |
| mwinkleman@lipcon.com | jhamilton@hamiltonmillerlaw.com |

| | |
|---|---|
| **Carol L. Finklehoffe, Esq.**<br>Florida Bar No.: 0015903<br>cfinklehoffe@lipcon.com<br>LIPCON, MARGULIES,<br>ALSINA & WINKLEMAN, P.A.<br>One Biscayne Tower, Suite 1776<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone No.: (305) 373-3016<br>Facsimile No.: (305) 373-6204<br>*Attorneys for Plaintiff* | **Robert M. Oldershaw, Esq.**<br>Florida Bar No.: 86071<br>roldershaw@hamiltonmillerlaw.com<br>**Elisha M. Sullivan, Esq.**<br>Florida Bar No.: 57559<br>esullivan@hamiltonmillerlaw.com<br>emarrero@hamiltonmillerlaw.com<br>dlemus@hamiltonmillerlaw.com<br>150 S.E. 2nd Avenue, Suite 1200<br>Miami, Florida 33131<br>Tel: (305) 379-3686<br>Fax: (305) 379-3690<br>*Attorneys for Defendant Hatecke Service USA, LLC* |
| **Anthony P. Strasius, Esq.**<br>Florida Bar No.: 988715<br>Anthony.strasius@wilsonelser.com<br>**Steven C. Jones, Esq.**<br>Florida Bar No.: 107516<br>Steven.jones@wilsonelser.com<br>Wilson, Elser, Moskowitz,<br>Edelman & Dicker, LLP<br>100 Southeast Second Street, Suite 3800<br>Miami, Florida 33131<br>Tel: (305) 374-4400<br>Fax: (305) 579-0261<br>*Attorneys for Defendant D-1 Davit International, Inc.* | **Curtis Mase, Esq.**<br>Florida Bar No.: 73928<br>cmase@maselaw.com<br>kfehr@maselaw.com<br>**Cameron W. Eubanks, Esq.**<br>Florida Bar No.: 85865<br>ceubanks@maselaw.com<br>rcoakley@maselaw.com<br>**Adam Finkel, Esq.**<br>Florida Bar No.: 101505<br>afinkel@maselaw.com<br>carbelaez@maselaw.com<br>filing@maselaw.com<br>**Scott P. Mebane, Esq.**<br>Florida Bar No.: 273030<br>smebane@maselaw.com<br>ctoth@maselaw.com<br>receptionist@maselaw.com<br>MASE, MEBANE & BRIGGS<br>2601 S. Bayshore, Drive, Suite 800<br>Miami, Florida 33133<br>Telephone: (305) 377-3770<br>Facsimile: (305) 377-0800<br>*Attorneys for Defendant NCL (Bahamas) Ltd* |